IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JASON L. HARRIS<br>42 Wood Street<br>P.O. Box 327<br>Smithfield, Ohio 43948<br><br>         Plaintiff,<br><br>    v.<br><br>SONGER SALES & SERVICES, INC.<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>         Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CASE NO.<br><br>JUDGE<br><br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND INJUNCTIVE RELIEF**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiff, Jason Harris, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## **PARTIES**

1. Harris is a resident of the City of Smithfield, County of Jefferson, State of Ohio.

2. Songer Sales & Services, Inc. is a foreign corporation that is licensed to conduct business in the County of Jefferson, State of Ohio, and several other states.

3. Songer Sales & Services, Inc. is hereinafter referred to as "Songer."

4. Songer is licensed to conduct business in the State of Ohio under the business name of JSW Steel USA, Ohio, Inc., with a business location at 1500 Commercial Avenue, Mingo Junction, Ohio 43938.

5. All material events alleged in this Complaint occurred in Jefferson County, State of Ohio.

## **JURISDICTION AND VENUE**

6. This court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000 in that Harris is alleging federal law claims under the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*

7. This Court has supplemental jurisdiction over Harris's state law claims pursuant to 28 U.S.C. § 1367 as Harris's state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. On August 5, 2021, Harris filed his formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in Agency Charge No. 532-2021-02348.

10. On October 29, 2021, the EEOC issued and mailed a Notice of Right to Sue letter regarding Harris's EEOC Charge of Discrimination.

11. Harris has received a Right to Sue letter from the EEOC, in accordance with 42 U.S.C. 2000e-5(f)(1), which is attached hereto as **Exhibit 1**.

12. Harris has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

13. Harris has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

## FACTS

14. Harris is a former employee of Songer.

15. Songer hired Harris on or around January 6, 2021 as a welder.

16. Harris is African American.

17. During the period of time he was employed, Harris was the only African American welder at his job location.

18. During the time Harris worked at Songer, Caucasian co-workers made racially disparaging and insensitive remarks regarding African Americans.

19. Arnold is Caucasian.

20. Busana is Caucasian.

21. In early January 2021, it was particularly hot inside the worksite one day.

22. On this particularly hot day, as Harris was welding, Harris heard Armold state "monkeys ain't supposed to be welding in the heat." ("Monkey Comment")

23. Harris was the only person welding at the time.

24. Harris was offended by Armold's Monkey Comment.

25. Harris felt Armold's Monkey Comment was racially motivated.

26. Harris did not say anything, but instead continued to do his job out of fear of retaliation from Armold if he spoke up about being offended by Armold's Monkey Comment.

27. In early January 2021, the day after Armold made his Monkey Comment, Harris was welding a pipe on the ground as Armold walked past him.

28. As Armold passed Harris, Armold turned to another Caucasian supervisor and said "Why is he welding here? Niggers shouldn't be in the union, and they shouldn't be welding pipe." ("N-Word Comment")

29. Harris was offended by Armold's N-Word Comment.

30. Harris felt Armold's N-Word Comment was racially motivated.

31. Harris did not respond to Armold's N-Word Comment for fear of retaliation.

32. Approximately a week after Armold's racially motivated comments, Busana instructed Harris to go work outside on a day when the weather conditions were nearly intolerable.

33. Busana did not instruct any Caucasian welders to go work outside in the cold on that day.

34. Harris reported this discriminatory behavior to his union steward. ("First Union Complaint")

35. After he reported Busana's discriminatory action, the union reassigned Harris to a different work location within a few hours.

36. Shortly after Harris's First Union Complaint, Armold began offering unsolicited welding advice to Harris.

37. Harris felt that Armold was harassing him because the advice Armold provided was unnecessary.

38. Harris felt that Armold was singling him out because he was the only African American employee.

39. On or around January 15, 2021, Harris complained to his union steward that Armold was harassing him by singling him out and providing unsolicited welding advice. ("Second Union Complaint")

40. After Harris's Second Union Complaint, the union steward told Harris to stay away from Armold and to do his job.

41. On or around February 2, 2021, Harris was walking to the restroom at his jobsite.

42. As Harris walked to the restroom, he walked past Busana.

43. As Harris passed by him, Busana pushed his shoulder into Harris's chest and told Harris to "watch your black ass." ("Racially Motivated Assault and Threat")

44. Harris did not retaliate for Busana's Racially Motivated Assault and Threat.

45. Busana's Racially Motivated Assault and Threat caused Harris to fear for his own safety.

46. Later that same day, Harris reported Busana's Racially Motivated Assault and Threat to Armold. ("Complaint of a Racially Motivated Assault and Threat")

47. Defendant refused to take prompt remedial action regarding Harris's Complaint of a Racially Motivated Assault and Threat.

48. Under information and belief, Songer has a policy to investigate reports of assault or any other significant workplace events.

49. Harris's Complaint of a Racially Motivated Assault and Threat was a report of an assault.

50. An investigation should include interviewing the complainant.

51. An investigation should include interviewing the subject(s) of the complaint.

52. An investigation should include interviewing the subject(s) of the reported incident.

53. An investigation should include interviewing witnesses to the reported incident.

54. An investigation should include getting a written statement from the complainant.

55. An investigation should include getting a written statement from the subject(s) of the complaint.

56. An investigation should include getting a written statement from the subject(s) of the reported incident.

57. An investigation should include getting a written statement from the witnesses to the reported incident.

58. In response to Harris's Complaint of a Racially Motivated Assault and Threat, Defendant did not interview Harris.

59. In response to Harris's Complaint of a Racially Motivated Assault and Threat, Defendant did not interview Busana.

60. In response to Harris's Complaint of a Racially Motivated Assault and Threat, Defendant did not interview any witnesses.

61. In response to Harris's Complaint of a Racially Motivated Assault and Threat, Defendant did not get a written statement from Harris.

62. In response to Harris's Complaint of a Racially Motivated Assault and Threat, Defendant did not get a written statement from Busana.

63. In response to Harris's Complaint of a Racially Motivated Assault and Threat, Defendant did not get a written statement from any witnesses.

64. On or around February 2, 2021, Armold and two other supervisors called Harris into a meeting.

65. At this meeting, Armold informed Harris that he was being terminated for assaulting and fighting Busana.

66. Harris's termination notice stated that he was also being given a "do not rehire" designation.

67. Harris tried to explain that Busana had assaulted him, and that he did not fight Busana during the incident.

68. Arnold did not listen to Harris or give him any chance to explain what had occurred earlier that day with Busana.

69. Arnold stated that he had no intention of disciplining Busana regarding Harris's Complaint of a Racially Motivated Assault and Threat.

70. By not disciplining Busana regarding Harris's Complaint of a Racially Motivated Assault and Threat, Defendant ratified Busana's illegal conduct.

71. By not disciplining Busana regarding Harris's Complaint of a Racially Motivated Assault and Threat, Defendant allowed Busana's illegal conduct to continue.

72. Arnold treated Harris differently from Caucasian employees.

73. Under information and belief, Defendant has a progressive discipline policy.

74. Defendant has used the progressive discipline policy when disciplining individuals who have not made protected complaints.

75. Under the discipline policy, Defendant have not provided Harris an active written discipline.

76. Under the discipline policy, Defendant have not suspended Harris's employment.

77. Defendant skipped progressive discipline steps when they terminated Harris's employment.

78. Defendant does not skip progressive discipline steps when terminating the employment of individuals who have not made protected complaints.

79. Defendant skipped progressive discipline steps when they terminated Harris's employment in retaliation for Harris's protected complaint.

80. Defendant had no legitimate non-discriminatory basis for terminating Harris's employment.

81. Defendant's purported reason for Harris's termination is pretext for race discrimination.

82. Defendant terminated Harris's employment in retaliation for making his First Union Complaint regarding race discrimination and harassment in the workplace.
83. Defendant terminated Harris's employment in retaliation for making his Second Union Complaint regarding race discrimination and harassment in the workplace.
84. Defendant terminated Harris's employment in retaliation for making a Complaint of a Racially Motivated Assault and Threat regarding race discrimination and harassment in the workplace.
85. The above facts demonstrate that Defendant engaged in a pattern and practice of race discrimination.
86. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful retaliation.
87. There was a causal connection between Harris's First Union Complaint and Defendant's termination of Harris.
88. There was a causal connection between Harris's Second Union Complaint and Defendant's termination of Harris.
89. There was a causal connection between Harris's Complaint of a Racially Motivated Assault and Threat and Defendant's termination of Harris.
90. Defendant knowingly terminated Harris's employment.
91. Defendant knowingly took an adverse employment action against Harris.
92. Defendant knowingly took an adverse action against Harris.
93. Defendant intentionally terminated Harris's employment.
94. Defendant intentionally took an adverse employment action against Harris.
95. Defendant intentionally took an adverse action against Harris.
96. Defendant knew that terminating Harris would cause him harm, including economic harm.
97. Defendant willfully terminated Harris's employment.
98. Defendant willfully took an adverse employment action against Harris.

99. Defendant willfully took an adverse action against Harris.

100. Harris was terminated because of his race.

101. Harris was terminated in retaliation for making complaints about race discrimination and harassment in the workplace.

102. As a result of Defendant's discriminatory and retaliatory treatment, including terminating his employment, Harris suffered and will continue to suffer damages.

### COUNT I: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C.A § 2000e-2

103. Harris restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

104. Harris is African American.

105. Throughout his employment, Harris was fully competent to perform his essential job duties.

106. Defendant treated Harris differently than similarly situated employees on the basis of Harris's race.

107. Defendant's conduct was in violation of 42 U.S.C.A. §2000e-2.

108. As a direct and proximate cause of the Defendant's wrongful conduct, Harris has suffered and will continue to suffer damages.

### COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *ET SEQ.*

109. Harris restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

110. Defendant is a qualified employer under R.C. § 4112.01 *et seq.*

111. Harris is a qualified employee under the R.C. § 4112.01 *et seq.*

112. Harris is African American.

113. Defendant treated Harris differently than other similarly situated employees based on his race.

114. Defendant discriminated against Harris based on his race.

115. Defendant violated R.C. § 4112.01 *et seq.* by discriminating against Harris based on his race.

116. Defendant violated R.C. § 4112.01 *et seq.* by terminating Harris based on his race.

117. As a direct and proximate cause of Defendant's conduct, Harris suffered and will continue to suffer damages.

### COUNT III: UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C.A §2000e-3

118. Harris restates each and every prior paragraph of the Complaint, as if it were fully restated herein.

119. Harris regularly opposed the unlawful race discrimination he was experiencing during his employment with Defendant.

120. Harris reported the harassment and discrimination to his supervisors.

121. As a result of Harris opposing unlawful race discrimination and harassment, Defendant retaliated against him by creating a hostile work environment.

122. As a result of Harris opposing unlawful race discrimination and harassment, Defendant retaliated against him by terminating him.

123. Defendant's conduct was in violation of 42 U.S.C.A. § 2000e-3.

124. As a direct and proximate cause of Defendant's wrongful conduct, Harris has suffered and will continue to suffer damages.

### COUNT V: RETALIATION IN VIOLATION OF R.C. §4112.01 *et seq.*

125. Harris restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

126. Harris opposed the unlawful race discrimination he was experiencing during his employment with Defendant.

127. Harris reported the harassment and discrimination to his supervisors.

115. Defendant violated R.C. § 4112.01 *et seq.* by discriminating against Harris based on his race.

116. Defendant violated R.C. § 4112.01 *et seq.* by terminating Harris based on his race.

117. As a direct and proximate cause of Defendant's conduct, Harris suffered and will continue to suffer damages.

### COUNT III: UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C.A §2000e-3

118. Harris restates each and every prior paragraph of the Complaint, as if it were fully restated herein.

119. Harris regularly opposed the unlawful race discrimination he was experiencing during his employment with Defendant.

120. Harris reported the harassment and discrimination to his supervisors.

121. As a result of Harris opposing unlawful race discrimination and harassment, Defendant retaliated against him by creating a hostile work environment.

122. As a result of Harris opposing unlawful race discrimination and harassment, Defendant retaliated against him by terminating him.

123. Defendant's conduct was in violation of 42 U.S.C.A. § 2000e-3.

124. As a direct and proximate cause of Defendant's wrongful conduct, Harris has suffered and will continue to suffer damages.

### COUNT V: RETALIATION IN VIOLATION OF R.C. §4112.01 *et seq.*

125. Harris restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

126. Harris opposed the unlawful race discrimination he was experiencing during his employment with Defendant.

127. Harris reported the harassment and discrimination to his supervisors.

128. As a result of Harris opposing unlawful race discrimination and harassment, Defendant retaliated against him by creating a hostile work environment.

129. As a result of Harris opposing unlawful race discrimination and harassment, Defendant retaliated against him by terminating him.

130. Defendant's actions were retaliatory in nature based on Harris's opposition to the unlawful discriminatory conduct and harassment.

131. Defendant's actions were in retaliation of Harris's protected opposition of the practices in violation of R.C. §4112.02(I).

132. Defendant violated R.C. §4112.01(I) by terminating Harris.

133. As a direct and proximate result of Defendant's retaliatory discrimination, Harris has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Harris demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Harris to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Defendant for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Harris's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
Email: paul.filippelli@spitzlawfirm.com

*Attorneys For Plaintiff Jason Harris*

## JURY DEMAND

Plaintiff Jason Harris demands a trial by jury by the maximum number of jurors permitted.

*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
Paul Filippelli (0097085)
**THE SPITZ LAW FIRM, LLC**